UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ARCADIS U.S., INC. | CIVIL ACTION NO. 20-0471 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STRYKER DEMOLITION & ENVIRONMENTAL SERVICES, LLC | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss filed by Defendant Stryker Demolition & Environmental Services, LLC (hereinafter "Stryker"). See Record Document 9. Plaintiff Arcadis U.S., Inc. ("Arcadis") opposes dismissal. See Record Document 15. Stryker has filed a reply. See Record Document 16. For the foregoing reasons, Stryker's Motion is hereby **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This matter concerns the interpretation of a subcontracting agreement (the "Subcontract") between Arcadis and Stryker. The relevant provision in the Subcontract itself states:

> 20. MEDIATION / ARBITRATION / ALTERNATIVE DISPUTE RESOLUTION
>
> If any dispute arises out of or relates to this Agreement, or the breach thereof, and the dispute cannot be settled through direct discussions by the representatives of the Parties, **the Parties agree to submit the matter in accordance with the provisions of the Prime Contract between Arcadis and its Client**… When not specified by the Prime Contract, the matter shall be submitted for mediation under the Construction Industry Mediation Rules of the American Arbitration Association before having recourse to a judicial forum.

Record Document 9-2 (emphasis added).

The referenced "Prime Contract" pertains to a Master Services Agreement between Arcadis and Ansell Healthcare Products, LLC ("Ansell"), whereby Arcadis agreed to hire a demolition subcontractor and manage the demolition of a battery manufacturing facility in west Shreveport. See Record Document 15 at 2. The relevant provision of the Prime Contract (the "Mediation Provision") provides:

> 34. Mediation
>
> If any dispute arises out of or relates to this Agreement or the breach thereof, then said dispute will first be referred to a panel consisting of at least one representative of each Party having authority to enter into agreements to settle the dispute… If the dispute cannot be settled through direct discussions by the panel representatives of the Parties, **the Parties agree then to submit the matter to mediation under the Construction Industry Mediation Rules of the American Arbitration Association before having recourse to a judicial forum.**

Record Document 9-2 (emphasis added).

The low bidder on this project was Stryker, and on December 11, 2018 Arcadis and Stryker entered into the Subcontract. See id. The project was scheduled to be completed by June 3, 2019; however, work was not substantially completed until July 26, 2019. See Record Document 1-2 at ¶¶12-13.

Prior to completion, Stryker submitted a Change Order request for $169,679 for removal of hazardous roofing material that it claimed was heavier than expected due to rainfall saturation. See id. at ¶14. Arcadis denied this request. See id. at ¶15. In response, Stryker recorded a mechanic's lien against the project site in the Caddo Parish mortgage records. See id. at ¶18. This dispute could not be resolved, leading Stryker to request mediation through the American Arbitration Association on November 22, 2019. See Record Document 9-1 at 4. Soon after, the parties agreed to a one-day mediation

conference in New Orleans on March 11, 2020 with H. Bruce Shreves serving as mediator. See Record Document 15 at 3.

After a day of negotiations failed to produce an agreement, Stryker left Arcadis with a last-and-final settlement offer. See Record Document 9-1 at 4. Arcadis requested time to consider, and a response deadline of Friday March 13, 2020 was set. See id. at 4-5. As that deadline neared, Arcadis asked for and was granted an extension until the close of business on March 16. See id. at 5. Despite additional time, Arcadis ultimately rejected Stryker's offer. See id.

Stryker replied to this email rejection by asking counsel for Arcadis if they were authorized to accept service of a complaint to be filed in Delaware state court. See id. Counsel for Arcadis responded that it had already filed suit against Stryker in the First Judicial District Court of the State of Louisiana, Caddo Parish, on March 11—the same day mediation commenced—and provided a copy of its complaint. See id. Further investigation by Stryker revealed that Arcadis had fax-filed this complaint while the mediation was ongoing and requested that service be withheld until March 23, 2020. See id. at 5-6. Frustrated by what it believed to be a premature filing, Stryker filed suit against Arcadis and Ansell in Delaware state court on March 17, 2020. See id. at 6.

Arcadis' suit was removed by Stryker to this Court on April 15, 2020. See Record Document 1. Arcadis claims: (1) breach of contract for failure to timely perform, (2) breach of contract for filing an improper lien, and (3) damages for the filing of said lien. See Record Document 1-2. Stryker's instant Motion is not directed towards these specific claims. Instead, Stryker argues for dismissal under Rules 12(b)(1) and 12(b)(6) for failure to abide by the Mediation Provision. See Record Document 9.

**LAW AND ANALYSIS**

I.     **Evidentiary Objections**

Before considering the merits of Stryker's Motion to Dismiss, the Court must first address a dispute over what documentary evidence it may consider. Although generally courts are constrained to the contents of the pleadings themselves when ruling on a 12(b)(6) motion to dismiss, limited exceptions do exist. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). Specifically, a court may consider documents attached to the motion to dismiss if they are referenced in the plaintiff's complaint and are central to the plaintiff's claims. See Scanlan v. Texas A&M University, 343 F.3d 533, 536 (5th Cir. 2003).

Arcadis objects to three documents attached to Stryker's Motion: (1) the declaration of Mark F. Klotzbach, Sr. (Record Document 9-3); (2) a Westlaw printout of a secondary source discussing mediation as a condition precedent in contracts (Record Document 9-4); and (3) the declaration of Anthony L. Byler (Record Document 9-7). See Record Document 15 at 25. These documents were not referenced in Arcadis' complaint, nor do they relate to Arcadis' claims. Rather, all three documents are central to Stryker's arguments in favor of dismissal based upon Arcadis' failure to mediate. Having not met the limited exception for consideration, the Court will not rely upon these three documents when analyzing the instant Motion.

II.     **Rule 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction**

When a Rule 12(b)(1) motion is filed alongside other Rule 12 motions, the court must consider the jurisdictional attack before any merit-based arguments. See Hitt v. City

of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977). The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. See Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears certain the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. See Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).

Stryker claims this Court lacks subject matter jurisdiction to hear this case because Arcadis filed suit prior to the end of mediation. See Record Document 9-1 at 7. Arcadis counters that diversity subject matter jurisdiction exists and any noncompliance with respect to the Mediation Provision would not deprive this Court of such jurisdiction. See Record Document 15.

In arguing for a Rule 12(b)(1) dismissal, Stryker asks this Court to "conflate non-performance of a contractual condition precedent with deprivation of subject matter jurisdiction." N-Tron Corp. v. Rockwell Automation, Inc., 2010 WL 653760 at *4 (S.D. Ala. Feb. 18, 2010). While various federal courts have been willing to do so—oftentimes with little discussion or distinction as to which grounds they are granting dismissal on—this Court draws a sharp distinction between such substantive shortcomings and the procedural barrier of subject matter jurisdiction.[1] The failure of such contractual conditions more properly asks the court whether it *should* hear a case from a breaching party as opposed to whether it *can* do so. Stated differently, the disregard for a specific condition

---

[1] "These decisions are symptomatic of the widespread epidemic of fuzzy, shorthand, imprecise and variegated usage of the term 'jurisdiction' by courts, litigants and commentators, a propensity the Supreme Court and Court of Appeals have recognized (and lamented) on numerous occasions." N-Tron, 2010 WL 653760 at *4.

precedent typically means a plaintiff cannot bring suit, not that the district court lacked jurisdiction to hear it. See Harris v. Amoco Production Co., 768 F.2d 669, 680 (5th Cir. 1985).

In the instant suit, there is complete diversity of citizenship and the amount in controversy exceeds $75,000. See Record Document 1. Thus, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, and Rule 12(b)(1) is not the proper vehicle for dismissal. Stryker must turn to Rule 12(b)(6) for dismissal of Arcadis' suit for failure to follow the Mediation Provision.

### III.     Rule 12(b)(6) Dismissal for Failure to State a Claim

"The consensus among district courts is that failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal under Rule 12(b)(6)." Franke v. Yates, 2019 WL 4856002 at *5 (D. Haw. Oct. 1, 2019); see also 3-J Hospitality, LLC v. Big Time Design, Inc., 2009 WL 3586830 at *2 (S.D. Fla. Oct. 27, 2009); 1 Mediation: Law, Policy and Practice § 6.4, Enforcement – Mediation as a condition precedent to litigation or arbitration by contract or statute (December 2019) (compiling cases). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). A claim is facially plausible when factual context is pled that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct. See id. A pleading that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). Nor does a complaint suffice if it tenders "naked assertions"

devoid of "further factual enhancement." Id. However, courts must accept all well-pleaded facts as true, in the light most favorable to the plaintiff. See Edionwe v. Bailey, 860 F.3d 287, 291 (5th Cir. 2019).

In their Motion to Dismiss, Stryker argues Arcadis failed to satisfy an express suspensive condition of the Subcontract by resorting to litigation prior to the termination of mediation. See Record Document 9-1 at 8. This action, Stryker believes, necessitates dismissal of the instant suit, rather than the usual stay of the proceedings until mediation is complete, because the mediation process has already taken place. See id. at 14. Arcadis counters that the language of the Mediation Provision requires only an agreement to mediate prior to filing suit, which occurred when the parties scheduled the specifics of the conference in December 2019. See Record Document 15 at 6. Alternatively, should the Court disagree with its interpretation, Arcadis argues it did in fact "submit to mediation" by commencing the process. See id. at 7. Arcadis makes additional arguments that Stryker forfeited its right to enforce the Mediation Provision by materially breaching the Subcontract and that dismissal, as opposed to staying the proceedings, is an improper remedy. See id. at 18-25.

### A. Governing Law of Contract Interpretation

Section 21 of the Subcontract and Section 30 of the Prime Contract together establish the governing law of this dispute shall be that of the state where the site is located. See Record Document 9-2. The project site at issue is located in Shreveport, Louisiana. See Record Document 1-2. As with most other states, Louisiana has codified a series of general rules of contract interpretation. See La. Civ. Code Ann. arts. 2045-2057.

In Louisiana, interpretation of a contract is the determination of the common intent of the parties. See La. Civ. Code Ann. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046. Words used in a contract must be given their generally prevailing meaning, but words capable of different meanings must be interpreted according to that which best conforms to the object of the contract and renders the contract effective. See La. Civ. Code Ann. arts. 2047-2049. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. Civ. Code Ann. art. 2056. With these rules of interpretation in hand, the Court turns to the Mediation Provision itself.

### B. "Agree then to Submit"

Arcadis first argues that the language of the Mediation Provision requires merely an agreement to submit disputes to mediation prior to turning to litigation. See Record Document 15 at 6. This, they argue, occurred at the latest in December 2019 when Arcadis consented to Stryker's Request for Mediation and selected H. Bruce Shreves as the mediator. See id. at 7. Stryker labels this argument a "tortured construction." Record Document 16 at 3.

Plainly, the Mediation Provision does not say what Arcadis purports it does. The specific language states that upon failure of preliminary negotiations between the parties, they "agree then to submit the matter to mediation." See Record Document 9-2. Usage of the phrase "agree then" is meant to signal the next step in the settlement process the parties must abide by. It would be unreasonable to interpret this language to mean the

condition precedent to litigation is merely an agreement to submit to mediation. As such, this interpretation is rejected.

### C. Meaning of "to Submit"

A much more credible opposition by Arcadis pertains to the meaning of the term "to submit." The crux of Stryker's Motion is that Arcadis failed to "submit the matter to mediation" prior to resorting to litigation because Arcadis filed suit on the day mediation began. See Record Document 9-1. In support, Stryker emphasizes a Tenth Circuit opinion by then-Judge Gorsuch discussing at length the definition of the verb in question. See id. at 10. Arcadis disputes Stryker's interpretation of this definition and argues to require them to wait until the mediation process terminated to file suit would be to read words into the Mediation Provision that do not exist. See Record Document 15 at 7.

In U.S. v. Manning, Judge Gorsuch's concurring opinion considers the meaning of the verb "submit" in the context of a criminal statute.[2] See 526 F.3d 611, 621 (10th Cir. 2008). Judge Gorsuch, citing Webster's Third New International Dictionary, wrote, "The term 'to submit' means to 'send or commit for consideration, study, or decision.'" Id. at 622. Judge Gorsuch additionally explored the Oxford English Dictionary's Second Edition, defining the term as "to refer to the decision or judgment of a person; to bring up or present for criticism, consideration, or approval." See id. at n. 2. Ultimately, he concluded the criminal defendant had submitted a false statement to his probation officer, not just the judge in his case, and therefore was not eligible for a statutory exception. See id. at 625.

---

[2] While the Court is keenly aware of the distinguishing characteristics between Manning and the instant matter, it limits its analysis to the plain meaning aspects of Judge Gorsuch's opinion.

Stryker believes this definition demonstrates that suit could not be filed until after the hired mediator fully considered, studied, or decided the matter, which could not have taken place until the mediation terminated on March 16, 2020. See Record Document 9-1 at 9. Put differently, Stryker argues Manning stands for the proposition that mere delivery does not constitute a submission—something more is required. However, this argument overlooks the important fact that mediators cannot impose settlements or decide disputes, but rather serve to "guide the parties toward achieving their own settlement." Record Document 9-5 at 8. Without the capability to fully decide the dispute, the verb "submit" in the mediation context means the satisfaction of this condition would require the parties to send or commit their dispute to their selected mediator for consideration or study.

This understanding comports more closely with Arcadis' argument that a matter is submitted to a mediator when the dispute is presented or the process is initiated, as opposed to when it concludes. Arcadis puts forth a helpful example of this meaning in a context more familiar to the Court in arguing that under Stryker's interpretation, the instant Motion to Dismiss would not be submitted to this Court until a ruling was issued. See Record Document 15 at 10. To the contrary, research and consideration of this material has been ongoing since the Motion's filing, and to equate submission with decision would be improper.

Further support for this interpretation is evidenced by the American Arbitration Association (AAA) itself. The AAA website includes a fillable PDF entitled "Submission to

Mediation" for parties to complete and file with the AAA to begin the mediation process.[3] The AAA's Construction Industry Mediation Rules include sample mediation clause language that implies submission to mediation occurs at the beginning of the alternative dispute resolution process. See Record Document 9-5 at 12. Finally, if the Mediation Provision were meant to extend to the close of negotiations, Arcadis would have included language to that effect. The principal case cited by Stryker possessed such a clear mandate. See Stone & Webster, Inc. v. Georgia Power Co., 968 F. Supp.2d 1, 3-4 (D.D.C. 2013) ("If the mediation has not concluded within sixty (60) Days after its commencement…" then litigation can proceed); see also Fluor Enter., Inc. v. Solutia Inc., 147 F. Supp.2d 648, 651 (S.D. Tex. 2001) (mediation clause contained a standstill provision prohibiting litigation until thirty days had elapsed from the commencement of the mediation procedure).

Stryker's arguments are rooted in Louisiana's canons of construction. See Record Document 16 at 6. First, Arcadis' interpretation would not lead to a meaningless result, as it is commonplace for parties to file suit prior to and in some cases during mediation. If mediation is successful, any suit can be dismissed prior to the expense of trial and at minimal cost to all parties. For this reason, the filing of suit before mediation or while it is ongoing is not evidence the plaintiff will approach mediation in bad faith or with no intent to reach a compromise. Next, Stryker is correct that because Arcadis drafted the disputed Subcontract, any ambiguities must be construed against Arcadis. See id. However, the Mediation Provision is not ambiguous. The plain meaning of "to submit" supports the interpretation that by commencing the mediation process, Arcadis satisfied this

---

[3] This form is available at AAAMediation_Submission_to_Mediation_0.pdf (adr.org).

suspensive condition. The AAA itself uses this terminology in the context of initial steps. With the finding of a sensible interpretation, the Court must conclude Arcadis did not breach the Mediation Provision of the Subcontract and dismissal is inappropriate. Consequently, the Court need not address Arcadis' additional arguments concerning breach or whether a stay of the proceedings is a more reasonable outcome.

## CONCLUSION

At the core of Stryker's Motion to Dismiss is a belief that Arcadis cheated to win the "race to the courthouse" by filing suit in Louisiana prior to the completion of mediation. While Stryker believes Arcadis' interpretation is "lawyer's hodgepodge of ex post facto rhetoric and sophistry,"[4] the plain language of the Mediation Provision supports this interpretation. Stryker is free to engage in further motion practice to dispute the proper venue for this dispute.

For the stated reasons, Stryker's Motion to Dismiss (Record Document 9) is hereby **DENIED**. An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 1st day of March, 2021.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] Id. at 10.