UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ARCADIS U.S., INC. | CIVIL ACTION NO. 20-0471 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STRYKER DEMOLITION & ENVIRONMENTAL SERVICES, LLC | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Rule 12(c) Motion for Partial Judgment on the Pleadings [Fraud] filed by Plaintiff and Defendant-in-Counterclaim, Arcadis U.S., Inc.'s ("Arcadis"). See Record Document 93. Specifically, Arcadis seeks the dismissal of the fraud claims asserted in the Amended Counterclaim of Defendant and Counterclaimant, Stryker Demolition & Environmental Services, LLC ("Stryker"). See id. Stryker has opposed the motion. See Record Document 97. Arcadis replied. See Record Document 98. For the reasons set forth below, Arcadis's Rule 12(c) Motion is hereby **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This litigation arises from a large-scale demolition and abatement project ("the Project") in Shreveport, Louisiana. Arcadis entered into an agreement with Ansell Healthcare Products, LLC ("Ansell"), whereby Arcadis agreed to contract with a demolition contractor and supply project management for the demolition of the former battery manufacturing facility located at 6901 Westport Avenue in Shreveport, Louisiana. In addition to demolition, the Project also included disposal of lead and asbestos roofing materials. In accordance with a Services Agreement between Ansell and Arcadis, Arcadis formulated the bid specification package, solicited bids from contractors,

performed contractor evaluations, and provided related services for the Project. In September 2018, Arcadis prepared a request for proposals entitled "Work Plan – Environmental Removals and Demolition, Former Battery Manufacturing Facility, Shreveport, Louisiana" to solicit bids by contractors for the Project.

In October 2018, interested bidders, including Stryker, attended two site visits ("Bid Walks"). Arcadis maintains that during the Bid Walks, the prospective bidders observed layers of roofing material from the exposed, fire-damaged portions of the roof. Stryker submits that it was "unbeknownst" to it that there was a second roofing system hidden beneath the visible roofing system. Stryker also contends it was unknown that the roofing systems were heavily and pervasively saturated with water. According to Stryker, following the Bid Walks, the prospective bidders were permitted to submit questions to Arcadis seeking further information and clarification as to the Project requirements and site conditions. Specific questions were asked regarding whether the roof samplers dug into the roof to take "core" samples. Arcadis answered this question in the affirmative. It was never disclosed that there was a second roofing system or that the roofing systems were heavily saturated. Thereafter, three bids were submitted for the Project, with Stryker's bid as the lowest, responsive bid.

Arcadis hired Stryker as the demolition subcontractor on the Project and, on December 11, 2018, they entered into an Agreement for Subcontractor Services. Schedule F of the Subcontract contained "Special Provisions for Construction Services." Record Document 93-3 at 76. Subsection SP-F6 Site Conditions provides, in pertinent part:

> Subcontractor represents and warrants that it has had an opportunity to review and/or has carefully examined all necessary drawings, maps,

schematics, specifications, governmental restrictions, permits and license requirements, and all applicable laws, regulations and rules relating to the Work to be done and the Site, it surroundings and local conditions, and has made all investigations based on reasonably available information that are necessary to develop a full understanding of the hazards and difficulties which can be encountered and are likely to impact the cost or schedule to perform the Work.  SUBCONTRACTOR is thus familiar with conditions at the Site as are pertinent to or which may affect the Work and has been granted the right to conduct, and has conducted, all investigations it deems appropriate to determine that it can fulfill the requirements of this Contract. Notwithstanding any other provision of this Contract, SUBCONTRACTOR assumes the risk of all conditions, as specified in this Contract, that may affect SUBCONTRACTOR's ability to perform the Work and will, regardless of such conditions, or the expense or difficulty of performing the Work or the negligence, if any, of Arcadis, with respect to same, fully complete the Work for the stated price without further recourse to Arcadis.  Information on the Site and local conditions at the Site furnished by Arcadis are not guaranteed by Arcadis to be accurate, and is furnished only for the convenience of SUBCONTRACTOR.

The discovery of concealed conditions which could not reasonably have been anticipated by the SUBCONTRACTOR from information available to SUBCONTRACTOR may constitute a changed condition, which, to the extent such condition materially affects the cost or schedule to perform the Work, would entitle the SUBCONTRACTOR to a change and an equitable adjustment of the Contract price or time.  SUBCONTRACTOR warrants that it shall conduct appropriate investigations to determine, with reasonable certainty, the location of utility and service lines, underground storage systems, and other subsurface structures of any kind before commencement of any drilling excavation, or other work that has the potential to disturb these structures.  SUBCONTRACTOR further warrants that it shall conduct independent field investigations to confirm the location of subsurface structures before commencement of subsurface work and shall not rely exclusively on plot plans or other drawings provided to SUBCONTRACTOR in conducting these investigations.

Id. at 76-77.

Stryker began its work on the Project on December 19, 2018.  In May 2019, Stryker submitted a change order request for additional compensation for work relating to removal of the hazardous roofing material, namely the unanticipated weight of the hazardous

roofing material removed. Arcadis rejected the change order request because the request for proposal and the Subcontract dictated that all transportation and disposal costs were to be included in Stryker's bid amount and that Stryker would assume the risk of all conditions regarding site conditions. Stryker substantially completed its work on the Project by July 26, 2019. The Project was closed out on October 7, 2019. The full contract price of $2,049,369 was paid to Stryker.

On October 10, 2019, Stryker filed a Lien for $388,587.90 for "concealed conditions for the removal, transportation, and disposal of lead contaminated non-friable asbestos material." Record Document 1-2 at ¶ 18. The Lien was recorded in the mortgage records in Caddo Parish, Louisiana. See id. On October 22, 2019, Arcadis demanded Stryker release and cancel the Lien. See Record Document 1-2 at ¶ 20. Stryker canceled the Lien on April 14, 2020.

On November 18, 2019, Arcadis submitted a "Notice of Claim" to Stryker "for all additional costs incurred by Arcadis as a result of Stryker's delayed progress during project implementation at the Ansell Battery Plant demolition project." Record Document 60-4 at 23-24. Litigation then ensued.

Arcadis asserted three claims against Stryker: failure to timely perform; breach of contract for filing a lien; and damages for wrongful filing of line. See Record Document 1-3.[1] Stryker filed an Amended Counterclaim for, *inter alia*, fraud. See Record Document 88 at 29-32. Stryker alleges fraudulent misrepresentation under Louisiana Civil Code

---

[1] Stryker filed a Motion for Summary Judgment (Record Document 50) seeking to dismiss these claims. Such motion was recently granted in part and denied in part. See Record Documents 103-104. The Court granted the motion as to timely performance and denied the motion as to the claims/causes of action relating to the Lien. See id.

Article 1953, namely fraud by misrepresentation, silence, inaction, and suppression.[2] Stryker contends that "Arcadis knew or should have known of the actual conditions of the property, including: (a) the fact that the roof consisted of two separate roofing systems; (b) the fact that the roof could and did become saturated with water in a manner that would not be anticipated for a roof of the materials, age, and condition observed and observable by Stryker before Stryker submitted its bid; (c) the fact that the concrete slab on grade was equal to or exceeded 12 inches in thickness; (d) the fact that 4 tanks in the WWTP contained sludge that had to be cleaned before the tanks could be removed from the Property; and (e) the fact that there were 4 large vaults beneath the concrete slabs that were not disclosed by Arcadis." Record Document 88 at ¶ 125. Stryker further alleges:

> Despite superior knowledge of the two (2) roofing systems and heavy saturation, and influence over Stryker who was performing its work, for the pecuniary benefit of Arcadis, Arcadis misrepresented, suppressed, or omitted true information regarding the actual conditions as set forth above to induce bidders, including Stryker, to submit bids that were far lower than they would have been if the bidders had full knowledge of the actual conditions of the Property.
>
> Also, despite a duty to exercise reasonable care not to supply false or incorrect information to Stryker, as well as a duty to correct any false or incorrect information provided to Stryker, Arcadis breached those duties by supplying false information regarding the number of roofing systems and composite of roofing layers in its Q&A document in October of 2018.

Id. at ¶ 136. Stryker alleges "Arcadis knew of some or all of the undisclosed and hidden conditions on which it knew Stryker relied in making its bid, and never intended to honor

---

[2] The Fifth Circuit has held that state claims of fraud do not escape the pleading requirements of the federal rule. See Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).

change order requests at such time as Stryker actually encountered such conditions." Id. at ¶ 142.

Arcadis now seeks dismissal of Stryker's fraud claims on the ground Stryker cannot succeed on a fraud by misrepresentation, suppression, or omission of information regarding the site conditions because there was no duty to disclose absent a fiduciary relationship or a relationship of confidence. See Record Document 93. Additionally, Arcadis contends that Stryker's fraud allegations set forth in the Amended Counterclaim still fail to satisfy the Rule 9(b) requirement that fraud be pled with particularity, even after amendment. See id.

## LAW AND ANALYSIS

**I.    Rule 9(b) and Rule 12(c) Standards.**

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) governs state-law fraud claims such as those alleged in this case. See Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338-39 (5th Cir. 2008). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Id. at 339. "Put simply, Rule 9(b) requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue." Id.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule

12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008). "A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." Shushany v. Allwaste, Inc., 992 F.2d 517, 520 (5th Cir. 1993).

Under the Rule 12(b)(6) standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading is deficient. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Courts must accept all factual allegations in the complaint as true. See id. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014).

Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

## II.     Fraud Standard.

Louisiana Civil Code Article 1953 provides: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for

one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." "The elements of fraud include: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." See Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).

When fraud is alleged to have been perpetrated by silence or suppression of the truth, "there must exist a duty to speak or to disclose information." McCarthy v. Evolution Petroleum Corp., 2014-2607 (La. 10/14/15), 180 So. 3d 252, 258.  Generally, no duty to speak or disclose exists but it "may arise where there exists a fiduciary relationship between the parties." Becnel v. Grodner, 2007-1041 (La. App. 4 Cir. 4/2/08), 982 So. 2d 891, 894.  The Louisiana Supreme Court has described a fiduciary relationship as "one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other." Plaquemines Par. Comm'n Council v. Delta Dev. Co., 502 So. 2d 1034, 1040 (La. 1987).  "The defining characteristic of a fiduciary relationship . . . is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." Scheffler v. Adams & Reese, LLP, 2006-1774 (La. 2/22/07), 950 So. 2d 641, 648.

### III.  Analysis.

Stryker does not allege fraud by affirmative misrepresentations, but rather that Arcadis committed fraud by silence or omission regarding the roofing materials, concrete, and/or other alleged existing conditions.  Both parties agree that under Louisiana law, fraud by silence or suppression of the truth requires a duty to speak or disclose

information, and that no duty to speak or disclose exists unless there is a fiduciary relationship or some type of special relationship of confidence or trust.

Stryker submits that its Amended Counterclaim (Record Document 88) sufficiently pleads facts demonstrating that Arcadis owed a fiduciary duty to Stryker. Stryker contends a relationship of confidence arose when Arcadis requested bids and that Arcadis maintained a position of superiority regarding access to information and held itself out to be an expert as to the Project. See Record Document 97 at 9-10. Relying upon a 1941 Louisiana appellate case, Stryker argues that a fiduciary duty arises when a party has been invited to seek information. See Record Document 97 at 9, citing Griffing v. Atkins, 1 So.2d 445 (La.App. 1 Cir. 1941). Stryker also claims a relationship of confidentiality arises when one party holds themselves out as experts and the other party does not have the same access to information. See Record Document 97 at 9, citing First American Bankcard, Inc. v. Smart Business Tech, Inc., et al., 178 F.Supp. 3d 390 (E.D. La. 2016). Stryker maintains its relationship with Arcadis was not an "arms-length transaction" because of "the intricacies of a contractor/subcontractor relationship." Record Document 97 at 10. Finally, Stryker notes that "Arcadis cannot point to any statute rejecting a fiduciary or confidential duty between contractors and subcontractors" and that Subsection SP-F6 is not dispositive and does not preclude a claim of fraud by silence or omission. Id. at 11-13.[3]

---

[3] Stryker further submits that its Amended Counterclaim (Record Document 88) sufficiently pleads the necessary facts to establish fraud based on silence or omission. See Record Document 97 at 13-15. However, the Court will not reach this issue because – as stated *infra* – Stryker failed to plead sufficient facts to establish a fiduciary relationship or some type of special relationship of confidence or trust which are required elements of a fraud by silence or omission claim.

The Court holds that Arcadis's motion as to Stryker's fraud claim is well-founded. Stryker's position would extend and expand the duties between parties in an arm's length business transaction. Stryker's argument would imply a duty to disclose in nearly every commercial transaction and/or construction contract. Under Stryker's interpretation of fraud by silence or suppression of the truth, the exception would swallow the rule.

Stryker relies heavily upon <u>Griffing</u> and <u>First American Bankcard</u> to support its argument that Arcadis had a duty to disclose because a fiduciary duty and/or a relationship of confidentiality arose between Stryker and Arcadis. Yet, the Court finds both cases to be distinguishable. In <u>Griffing</u>, the intervenor was invited to have a ring he found appraised by a local jeweler. See <u>Griffing</u>, 1 So.2d at 446. The plaintiff, an employee of the jeweler, purchased the ring for $130, despite the ring being valued at $1,250. <u>See id.</u> at 447. The intervenor sought revocation of the sale on the grounds of fraud and deceit, namely "false statements made to him and the suppression of the truth . . . [as to] the real character and value of the ring." <u>Id.</u> The intervenor argued he was fraudulently caused and induced to sell the ring. <u>See id.</u> The court concluded:

> While fraud is never to be presumed, courts of justice recognize the cunning concealment in which it shrouds its devious practices and the difficulty of tracing it by direct proof. We can well conceive of such a situation in this case where such practices may well have been indulged in and it becomes next to impossible to put our finger on any particular piece of direct testimony to show actual fraud on the part of Griffing. As a matter of fact his fraud wasn't active but rather of a passive nature in that he failed to disclose the information which he was in justice and in equity bound to disclose to the other party to the contract ***who was not on an equal footing with him***. He suppressed the truth, and therefore the case comes within the rules laid down in our Civil Code.

<u>Id.</u> at 450 (emphasis added) (internal quotations omitted). The <u>Griffing</u> decision was based on an extraordinary set of facts and focused on two parties who were not on equal

footing – an unsophisticated individual who found a ring at an LSU football game compared to a seven-year employee at a jewelry store. See id. at 446. Stryker's proffer to align itself with the unsophisticated intervenor in Griffing lacks merit, as the record reveals Stryker had significant experience in the demolition industry. See Record Document 93-3 (Stryker's Work Plan & Proposal) at 10-47.

In First American Bankcard, the court considered plaintiff's fraudulent concealment claim, stating "the main deficiency with [p]laintiff's claim is its allegation regarding [d]efendants' duty to speak." First American Bankcard, 178 F. Supp. 3d at 402. The plaintiff had asserted a relationship of professional trust between the parties such that a duty to speak arose. See id. It also argued it was reasonable to rely on statements and information conveyed by the defendants because the defendants held themselves out as experts. See id. The plaintiff also submitted that it did not have access to the same information as Defendants. See id. The court eventually agreed with the defense's alternative argument, that is, in the alternative to a dismissal of the claim, the court ordered the plaintiff to plead the fraudulent concealment claim with particularity. See id. The court ordered the plaintiff to file an amended complaint to more particularly plead its fraudulent concealment claim, "specifically, its factual basis for the argument that [d]efendants had a duty to disclose." Id. Here, Stryker has not asserted facts that could constitute a fiduciary relationship or some other type of relationship of confidence that would lead to any duty to disclose by Arcadis.

In Thomas v. Pride Oil & Gas Properties, Inc., this Court noted that "an invitation to contract, without more, is insufficient to establish a fiduciary relationship or a duty to

disclose information." 633 F. Supp. 2d 238, 241 (W.D. La. May 7, 2009). In Thomas, this Court also distinguished Griffing from the matter at hand, stating:

> [T]he Complaint does not allege that a pre-exiting or professional relationship subsisted between the parties. *Cf. Griffing*, 1 So.2d at 446 (the jewelry store employee who suggested that Sims have the ring appraised was "friendly with the Sims").

Id. at 242. This Court went on to hold:

> Nothing in the Petition leads this Court to believe that the Lease resulted from anything other than a common, arms-length negotiation between Plaintiff and Defendant did not owe Plaintiff a duty to disclose any information it may have possessed regarding the possibility that substantial mineral deposits underlay Defendant's property, and Plaintiff's claim of fraud is dismissed.

Id.

The Court finds additional guidance in Louisiana cases specifically addressing alleged failures to disclose the entire truth in the context of the construction industry and holding that a fiduciary relationship does not arise out of a normal arms-length transaction. In Parkcrest Builders, LLC v. Housing Authority of New Orleans, the court considered three misrepresentations involving a failure to disclose the entire truth. Parkcrest Builders, No. 16-14118, 2017 WL 2428099, at *4 (E.D. La. June 5, 2017). The court noted that the Housing Authority did not allege that a fiduciary relationship existed between itself and Liberty, nor did the allegations in the counterclaim lead to such a conclusion. See id. Instead, the factual "allegations suggest[ed] that the relationship between HANO and Liberty was that of two parties to a business transaction." Hence, there was no duty to disclose on the part of Liberty. See id., citing Wilson v. Mobil Oil Corp., 940 F. Supp. 944, 955 (E.D. La. 1996) ("[A]bsent a duty to disclose, silence with respect to the details of a business transaction does not constitute fraud."). Louisiana

courts have consistently held that a petition fails to articulate a cause of action for fraud by silence when the petition is devoid of factual allegations of any relationship of confidence between the parties.  See Bottinelli Real Est., L.L.C. v. Johns Manville, Inc., 2019-0619 (La. App. 4 Cir. 12/27/19), 288 So. 3d 179, 185–86.

Here, Stryker has not presented the Court with factual support for its allegation that a fiduciary or special relationship existed between Stryker and Arcadis.  The Subcontract does not expressly create any fiduciary duty or any other type of relationship of trust and confidence.  Instead, the record evidence demonstrates that the relationship at issue was a customary arm's length business transaction between sophisticated parties in the construction/demolition industry.  In fact, Stryker had significant experience in the demolition industry, especially demolition involving hazardous roofing material.  See Record Document 93-3 at 10-47.  Despite Stryker's arguments to the contrary, the Court finds nothing in the record to support extraordinary circumstances here.  Stryker simply has not asserted any plausible facts that could create a fiduciary or special relationship with Arcadis such that there would be a duty to disclose on the part of Arcadis.

Additionally, the plain language of the Subcontract allocates responsibility – and the risk – for inspecting the site conditions to Stryker, the subcontractor.  See Record Document 93-3 (Subsection SP-F6 Site Conditions) at 76.  Parties such as Arcadis and Stryker are free to contractually allocate responsibilities and risk of varying site conditions in their construction/demolition contracts.  See T.L. James & Co., Inc. v. Traylor Bros. Inc., 294 F.3d 743, 753 (5th Cir. 2002).  Stryker agreed it was "familiar with conditions at the Site as are pertinent to or which may affect the Work" and that it had "been granted the right to conduct, and ha[d] conducted, all investigations it deems appropriate to

determine that it can fulfill the requirements of this Contract." Id. Stryker assumed the risk of all conditions and "regardless of such conditions, or the expense or difficulty of performing the Work . . ., [Stryker was to] fully complete the Work for the stated price without further recourse to Arcadis." Id. The Subcontract specifically stated that "information on the Site and local conditions at the Site furnished by Arcadis are not guaranteed by Arcadis to be accurate, and [was] furnished only for the convenience of [Stryker]." Id.

## IV.     Stryker's Second Request to Amend.

In the event that the Court concluded that its fraud claim was meritorious but required additional factual support, Stryker requested additional leave to further amend its claim." Record Document 97 at 15. Arcadis opposed such request. See Record Documents 93 at 19-20 and 98 at 9.

The deadline to amend pleadings long ago expired in July 2021. See Record Document 33. Stryker was granted leave to amend its fraud claim and filed such Amended Counterclaim in December 2022. See Record Documents 81 and 88. Stryker must once again show good cause to modify the scheduling order before the more liberal standard of Rule 15(a) applies. See S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003). In S&W Enterprises, the Fifth Circuit explained that courts are to consider four factors when deciding a post-deadline motion for leave to amend: (1) the movant's explanation for his failure to timely move for leave; (2) the importance of the proposed amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. See id. On balance, these factors support denying leave to amend in this instance.

Here, Stryker has not explained what additional factual support it can add to its fraud claim. At this late stage of litigation – approximately one month from the August 7, 2023 trial date – Arcadis would be prejudiced by allowing the amendment. This matter has been continued several times and the Court intends to hold the August 2023 trial date. Moreover, the Court believes further amendment would be futile because the facts and circumstances of this case do not support a claim for fraud by silence or omission. See Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872 (5th Cir. 2000). Stryker's request to amend is, therefore, **DENIED**.

## CONCLUSION

For the reasons stated above, Arcadis's Rule 12(c) Motion for Judgment on the Pleadings [Fraud] is **GRANTED**. Stryker's fraud claims asserted in its Amended Counterclaim are **DISMISSED**. An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 5th day of July, 2023.

_____
United States District Judge